I couldn't hear you. Start again, please. My name is Jeff Bledge with Munger Tolson Olsen. I represent the plaintiff appellant in this action, Mary Doe. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Do your best to keep your voice up, please. Okay. I will, Your Honor. This appeal concerns a crucial aspect of Indian tribal sovereignty, namely who gets to decide whether an Indian child will be taken from her family, taken from her home, and placed permanently outside of her tribal lands with a non-tribal family. The question is who gets to decide what is in the best interest of this Indian child, the Indian nation to which she belongs, from which she comes, or the state. But, of course, it's not a policy answer. That's correct, Your Honor. So what's the legal answer? The legal answer is that nearly 30 years ago, the United States Supreme Court confirmed in Fisher v. District Court that Indian tribes have exclusive jurisdiction to decide child custody matters relating to involuntary removal of children who are living on the reservation. This jurisdiction the Supreme Court held derives from the quasi-sovereign status of the tribes and is inherent and an essential part of their sovereignty. As a result, it can't be changed by the state. It can't be changed by a waiver of a tribal member. It can be waived only by an act of Congress. So here, in this case, absent some federal law that clearly and unequivocally strips Indian tribes of this inherent sovereign power, tribes have, and they must have, the exclusive jurisdiction to decide what needs to be done to protect the future and the well-being of the child. This function, as the Fisher Court noted and as the Congress in enacting ICWA, the Indian Child Welfare Act, noted, goes to the core of what it means to be a sovereign, to determine the future of the next generation. That was the basis for Fisher, and that is why Congress reaffirmed that principle in passing ICWA, that the interests of the child and the interests of the tribe are congruent. Moreover, under recognized canons of statutory construction, well recognized by this court, if there is any ambiguity whatsoever in an act of Congress, this court must resolve that ambiguity in favor of tribal sovereignty. Now, in the case of the Indian Child Welfare Act, that's not simply a canon of construction. It's a canon which was made clear to Congress at the time it was enacting ICWA, and it was a canon which is incorporated into the enabling regulations, 44 Fed Reg 67586. Now, the district court below correctly recognized that there are only two even potentially relevant federal laws, Public Law 280 and the Indian Child Welfare Act. Neither one of those laws reduces the tribe's sovereign and exclusive jurisdiction over involuntary custody cases for children domiciled on the reservation. That is the intent of Congress with respect to both acts. That is how Public Law 280 and ICWA are written, and that is how ICWA has been interpreted and implemented in Wisconsin, in Florida, in Oregon, in Washington State, and in the portions of Montana in which Public Law 280 apply. And in terms of that has been implemented, are there court cases that deal with 1918 and Public Law 280 and the intersection of the two? Or is this a question of first impression? This is a question of first impression, Your Honor. And so it seemed to me that Judge Patel basically agreed with your argument until the end of her reasoning. And then she said, well, even if Public Law 280, the way it's interpreted, is only over voluntary child custody proceedings, that would seem illogical. What is the response to that? Well, I think the court has fairly characterized the decision of the district court. And the error of the district court was first in not looking at the whole sweep of ICWA and then not looking at the specific language and the intent. She focused on Section 1918 and made some factual assumptions which were incorrect, and she also neglected to consider the interplay between 1911 and 1918. So I'll address those now, Your Honor. First, as a fundamental premise, ICWA was enacted for one purpose, to end state court abuses and state abuses which had led to the wholesale removal of Indian children from their homes in breathtaking and tragic terms. The statistics were 25 to 35 percent of Indian children were being removed from their homes and placed in foster care or institutions or in permanent adoptive placement. And it was particularly bad here in California and in other Public Law 280 states. California, Minnesota, Wisconsin were among the worst offenders, and that's what Congress was focused on. When Congress enacted ICWA, it in no way intended to expand the scope of Public Law 280 to give the state additional jurisdiction to make more child custody determinations. Rather, the entire structure of ICWA is to curb state, is to preserve the existing sovereignty of the tribes, and then to curb the manner in which states acted when they did have either concurrent or some other form of jurisdiction. So in 1911 A and B, what Congress said was under Section 1911, if you are talking about a child who is domiciled on the reservation, there is exclusive jurisdiction in the tribe. It's not concurrent jurisdiction. The state has no business there. And then it has a caveat, except where existing federal law provides otherwise. Existing federal law would be the law of Public Law 280. It's the only law that anyone has pointed to. And as Chief Judge Patel observed, Public Law 280 does not encompass state authority, state jurisdiction in this type of a proceeding, an involuntary child custody proceeding for a reservation domiciled Indian child. Let me jump, if I can, further down the page of Judge Patel's decision, where she says it seems much more likely that Congress assumed Public Law 280 did apply to a broad range of child custody proceedings and wanted to offer tribes who had the necessary structures the opportunity for self-governance. Plaintiff does not contend that an Elam Indian Colony Tribal Court or other quasi-judicial body exists to hear this case. Congress was concerned about this, and then jumping over farther, therefore, unless plaintiff can demonstrate that the Elam Indian Colony had reassumed jurisdiction over child custody proceedings pursuant to Section 1918, the court finds as a matter of law that plaintiff cannot state a claim for exclusive jurisdiction by the tribe. I'm reading some stuff in amicus briefs that seems to suggest that there is some kind of a quasi-judicial body or a tribal court that's available to reassume custody over this. Is that right? That is correct, Your Honor. And so what does that mean in this case? Because it seems that if somebody had presented Judge Patel with the existence of an appropriate agency to handle this, she would have said that agency gets to handle it. And nobody did. Your Honor, if I may, I believe in the record we did advise the court that there was an executive council that was capable of making this decision. Capable. That was capable and prepared to make these decisions. Capable and prepared. Yes. And what else? I mean, well, we did answer the question. Was she wrong here when she said there's nothing that exists to hear in this case? No. I think the court was mistaken. And I think that language does not accurately reflect what transpired in the proceedings below. Am I off the mark here? Because it seems to suggest to me that somebody ought to take a look at this and maybe it ought to go back to Judge Patel and your side should say, guess what? Exactly what you said needs to exist does exist. Here it is. And here's the representatives from that court. They're interveners or whatever it is. We're joining them in the case. And then it goes off in your direction. What am I missing? Your Honor, we'd be happy to have the case remanded. My understanding of what Judge Patel said was somewhat different, and I may have misread it, but at least my understanding was this. Her conclusion was that the counsel not only had to assume jurisdiction over these types of proceedings, but that it would also have to petition through Section 1918 to have the authority, granted by the Secretary of the Interior, to do that. Petition to whom? The Secretary of the Interior? That's correct, under Section 1918. And to the extent that the court was suggesting that, the court was mistaken. There is no requirement, first, that there be a reassumption, because there was nothing ever given away. It seems to me that she kind of conflated the concepts potentially. In other words, I'm not saying whether you're right, but if you are correct, and it seemed to me that she got to that point that you were correct, there's nothing to reassume. That is correct. ICCWA. In the case of voluntary custody, there could be a circumstance for reassumption, and then you'd have to talk to the BIA and go through various hoops. Is that correct? That's correct. The second reason why we don't believe a remand would be appropriate for the court to consider  Congress, in enacting ICCWA, specifically considered whether to use the term tribe or tribal court in 1911. And they rejected tribal court and adopted the term tribe. The reason is that a tribe is a sovereign entity, and it is not for the federal government or the state courts or for others to determine what sort of process they would use. There are other mechanisms provided, like intertribal exchange or whatever, aren't there? That's exactly right, Your Honor. There are tribal compacts which can be entered into. There can be a compact between the tribe and the state so that the state can assume some of these responsibilities. The key is that although there is a tribal council, the executive committee of the general council of the tribe, which did issue resolutions on this specific case regarding the appropriate placement of the child prior to the state court's decision, even though there is that capacity, that is not a relevant legal inquiry under ICCWA. The only relevant legal inquiry is whether or not this is a child who was domiciled on the reservation, undisputed, and whether or not she was a member of that tribe, undisputed. Her placement is therefore within the exclusive jurisdiction of the tribe. In addition, to the extent that what Judge Patel was relying upon was this assumption that Congress would never have drawn this type of conclusion, that the conclusion is illogical in some sense. It is not illogical. The assumption appears to have been that why would there have to be re-assumption jurisdiction over the relatively limited number of voluntary adoptions, which would fall within Public Law 280 and would be subject to concurrent jurisdiction of the state. And the response is that this is not a small number at all. This is a significant number of cases. And, in fact, if you go through the legislative history of ICCWA, one of the principal concerns of Congress was not just with involuntary removals. They were also concerned about voluntary removals. So there are a healthy number of these cases. However, voluntary removals pose less of a threat to Indian sovereignty because what you're talking about is a private contract. You're talking about a private adoption between two consenting parents, which is blessed by a body. On the other hand, when you're talking about an involuntary removal, you are making determinations by the state or by the governing body or the government as to what are our values in terms of what is the well-being of this child, what is appropriate rearing, what is appropriate parenting skills, who would be in the best position to protect the health and well-being of this child. One last point before I reserve the remainder of my time for rebuttal, and that is this is obviously a difficult case because years have passed, and we are well aware of that, and in particular my client is very much aware of the five years that she has been away from her child. We want to assure the court of what will happen if the court rules in our favor. What will happen is the district court will determine that the appropriate place for determination of the well-being of the child will be with the tribal court. Other federal courts have confronted this same situation years after the fact, in the Holloway case and the Holyfield case. In both of those cases, in one case it was four years and the other was six years had passed between the time of the adoption and the time that the case was remanded because it had been tried by a state court instead of a tribal court. In both cases, the tribal courts ultimately determined to leave the child with the adoptive parents. They, like state courts, like the people in this room, love their children and care about their children's well-being and will make the appropriate decision. That was the underlying understanding of ICWA. That was the purpose for recognizing and reaffirming this exclusive jurisdiction in ICWA. Walk me through the procedure. You brought this up. If we rule in your favor, what does that do to the current relationship between the adoptive parents and the child? The adoptive parents, the child would remain in the custody of the adoptive parents. Why? If we invalidate the entire procedure by which she got there, why does she remain in the custody of the adoptive parents? Because the tribe would be seized with the issue and they would maintain the status quo until they'd had an opportunity. Immediately when we rule, that releases, that eliminates that relationship. And so the child is now immediately returned to whatever relationship she has with the parents, right? And then the tribe has to come in and do something affirmative. Well, not exactly. There would be a reversal of the motion to dismiss. It would be remanded to the court. The court, in implementing the decision, could obtain assurances from the tribe or various other actions, could obtain a consent decree relating to how this would proceed before the tribe would assume its jurisdiction. What power does the court have to do that? I mean, if we invalidate this. I believe the case is still pending before the district court, so the court would have supervisory jurisdiction and it would take the appropriate action to. . . I still don't understand that. If we rule in your favor, what's the immediate legal result in terms of the relationship between the family and the child? I believe that the district court would then be required to vacate the decision of the state court. So as a legal matter, I believe the court is correct. Right. That what would happen is that the adoptive parents would no longer have legal right to. . . Any authority whatsoever over the child. That is correct. How does the district court have then to tell the tribal courts or the tribe what to do? Well, again, I believe that what would actually play out below, since the tribe has attempted to participate in the case below, and we are all present and the case has been assigned to a mediation, I think that what would happen is that there would be some effort made to assure that in the intervening period before the tribe assumed jurisdiction that allowances were made for maintaining the status quo and protecting the interests of the child. Well, couldn't a more practical reality be that if it went back to implement an order that the tribe has exclusive jurisdiction, that that order wouldn't become final? The district court could say they're not going to make that order final until the tribe has assumed jurisdiction, in which case then it's up to the tribe to do whatever the tribe does, because the district court can't. I mean, that would be absolutely upside down of your argument if the district court could do something vis-a-vis the child's status, right? Your Honor, I'm describing what I believe would happen as a practical matter as opposed to as a legal matter. Legally, just as in the Holloway case, just as in the Holyfield case, the adoptive parents would not have legal custody. As a practical matter, the child would remain with the adoptive parents, and the participants in this case, the natural mother, the adoptive parents, the federal court that has supervisory jurisdiction over the case, and the tribe would all be acting in the best interest of the child. Thank you. I will reserve the balance of my time. May it please the Court. My name is Mark LaForestier from the Attorney General's Office. I represent the Lake County Superior Court and the Honorable Judges Arthur Mann and Robert Crone. By what doctrine does a federal court have the power to call legislation illogical when on its face it requires a certain result and then overturn it in the manner in which Judge Patel did? I mean, just because legislation is illogical, what Supreme Court case or doctrine allows a federal court to undo legislation because it's illogical? Well, I think that is a difficult part of the district court's decision. But I think what the district court is getting to when she addressed ICWA was the purposes, the underlying purposes of ICWA. And I think it's important that ICWA be understood in the context of Public Law 280 and the purposes of that statute. Something that the Court needs to bear in mind in considering this case is the practical implication of what the appellant's view of this case is. California is a very unique state. And Public Law 280 was initially drafted to address the unique situation of California Indian tribes. Other states were subsequently added as mandatory states and then when the statute was amended as voluntary states. What makes California unique is that California has now over 100 tribes. Many of those tribes, although recognized by the federal government as endowed with inherent powers of tribal sovereignty, would in any other context be deemed families or extended families. In the extreme case, there are tribes in California that are recognized that have only one adult member. The Augustine tribe is one. The Buena Vista Rancheria is another. There are others. And while that's an extreme example, there are many other tribes that have membership roles less than 10 in the teens, 20s, 30s. And so the implication of vesting Indian tribes with exclusive jurisdiction over child custody proceedings is that the children who are members of tribes would potentially come under the exclusive jurisdiction of the very people who are responsible for their care in the first place. This is a superior argument to address to a legislature. There's no question. Well, I agree, Your Honor, and the legislature has addressed that concern, both in Public Law 280 and in the Indian Child Welfare Act. Public Law 280, as the Court is well aware, there are two prongs to Public Law 280. The first is the most litigated prong, the criminal provision that vests the state with authority over crimes on Indian country. The second prong is the civil prong. We have cited to the legislative history to Public Law 280, which apparently was not before the district court, and the legislative history provides that the intent of Congress was clearly to provide jurisdiction to state courts over all civil actions without reservation, and in California. Is this a civil action, or does it fall into another category yet? Well, this is a civil action. I think that the What about Bryan? Civil adjudicatory. It might have simplistically been civil versus criminal until Bryan came along. So it seems to me that Judge Patel was correct. We have to figure out, is this a regulatory conduct of the State of California? Do you disagree with that? I do, Your Honor. In the Bryan case, first of all, the discussion of the civil prong of Public Law 280 in Bryan is dicta. That case involves Everybody who's been here today. Of course. If you don't agree with it, it's dicta, and if you like it, it's not. That's the new definition of dicta. If you don't like it, it's dicta. Well, in that case, in fairness, Your Honor, in that case, the State was attempting to exercise taxation jurisdiction over an area of Indian country, and the court decided that that did not fall within, that fell within the criminal regulatory side of things, not the criminal prohibitory, which is the analysis that is focused on the first prong of Public Law 280. And then the court looked to the civil prong and said, well, taxation doesn't fall within the civil prong of Public Law 280 because that is concerned solely with the jurisdiction of State courts over civil causes of action that arise within areas of Indian country. And in looking at the legislative history, the court said, well, what Congress was principally or primarily concerned with was the lack of law enforcement infrastructure and the methods by which civil claims could be adjudicated within Indian country. Now, again, considering California, nowhere in the country was that concern more appropriate than in California, where the tribes are as poor, and in many cases, although not all, and I mean no slight to the Elam tribe whatsoever, unsophisticated and without sufficient infrastructure to exercise jurisdiction over these claims. And so Public Law 280 was specifically devised to provide a forum for just this kind of action. And in enacting the Indian Child Welfare Act, Congress recognized the importance of Public Law 280 in providing forums for civil actions of any kind involving Indians. And in the jurisdictional provisions of the Indian Child Welfare Act, Section 1911 and 1918, Public Law 280 is specifically referenced. In Section 1911, Indian tribes are granted exclusive jurisdiction over child custody proceedings. However, there is a caveat there, and that refers to what this Court and what the Supreme Court have understood to mean in Public Law 280, and it should be    are unitary. The Supreme Court has ruled in Section 1911 and 1918, which provides for the reassumption of exclusive tribal jurisdiction over child custody proceedings. The extent that they're not already residing in the sovereign. I mean, in other words, child custody proceedings is not a unitary thing, as it turns out, in practice, because it's one thing for two individuals to fight over their children as a result of a divorce or otherwise. It's another thing for the State to come in and take a child away from a parent. Conceptually, that's true, but under the ---- Conceptually, everybody keeps talking about practical. I think there's quite a both practical and legal difference between those two forms, don't you? No, I don't. Not in the context of ICWA, Your Honor, because the references in the jurisdictional provisions that I just mentioned, Section 1911 and 1918, refer specifically to child custody proceedings, which is a defined term in ICWA. In Section 1903, child custody proceeding is defined to include what would be both voluntary and involuntary proceedings. There is absolutely nothing in ICWA that suggests that the court, that the superior court's jurisdiction is dependent upon what may be voluntary or involuntary. That concept is absolutely absent from the jurisdictional provisions of ICWA, and because a voluntary proceeding can transform into an involuntary proceeding or vice versa, depending on the whim or the conduct of the custodial parent. And so if the court were to accept this notion that voluntary, that there is a distinction in the superior court's jurisdiction based on the voluntary or involuntary nature of the proceeding, then presumably that jurisdiction could change based upon the conduct of the mother, and that would be chaotic. What's wrong with that? Because if it goes to an inherent sovereign power, it changes from just a normal private dispute over who gets the child, and it goes into the sovereign power because of some issue about taking the child away. I don't see why that's, either intellectually or as a practical matter, inconsistent. Well, Congress perceived that there would be circumstances where a child residing on the reservation would be in an emergency circumstance removed from the home by the State agency, and that's in Section 1922 of ICWA. And once the State agency assumes jurisdiction over the child, ICWA provides three options, one of which it must proceed with. Either return the child to the parent, return the child to the jurisdiction or transfer the child custody to the tribe, or commence a proceeding in State court under the provisions of ICWA. And ICWA is primarily addressed not to divesting the State of jurisdiction that it already has, but to providing procedural safeguards for proceedings in State court to assure that the sovereign concerns of tribes are addressed. In Bryan, the Court, when it looked at the statute, it did refer to a law review article that dealt with the issue and said, in part, a fair reading of these two clauses, that is, Public Law 280, suggests that Congress never intended civil laws, in quotes, to mean the entire array of State non-criminal laws, but rather that Congress intended civil laws to mean those laws which have to do with private rights and status. Now, doesn't that support the notion that there's a distinction between the voluntary and involuntary proceedings of the kind that counsel had indicated? Well, Congress in ICWA certainly didn't perceive any distinction between voluntary and involuntary proceedings. But what's notable about the Bryant decision is that it also references, as appropriate subject matter for a superior or a State court action, divorce and marriage proceedings, which also involve the family, and are really conceived of as something akin to an in rem proceeding. And that's really what we have. Divorce and marriage, of course, are between litigants, although the State is the one that enforces it. It's contrasted with a dispute between the State on the one hand and an individual on the other. Well, the underlying superior court action is not really a dispute between the State and someone else. It was entitled in the matter of the minor child. And it is really what this case presents. It's precisely the point. It's not a dispute really between, you know, the mother and the father or the mother and whomever. It's the State power, is it not, that's being invoked there on behalf of the child. When the child is presented at the courthouse steps, the court is faced with a decision. Does it open the doors or does it bar them? And that's what this case is about. The appellants are suggesting that the court should bar the doors and do nothing. Public Law 280 has vested the State courts with the authority to adjudicate civil actions. And that's what the State court is doing. Now, what's distinguishable from this, what distinguishes this case from a case where the entire regulatory authority of the State is at issue is that the court is not enforcing an effort by the State to compel conduct that is in accord with State regulations. It is merely adjudicating interests. There's the child's interest in a safe haven. There's the mother's interest in custody over the child. And there's also the State's interest in the protection of one of its most vulnerable citizens. So it's adjudicating the right. Who should hold the right of custody to this child? It is not seeking to impose the entire regulatory authority of the State over Indian country. Sotomayor, it seems as you describe it, you know, the State, you really would appropriately insert the word the sovereign. And then the real question here is who should be the sovereign in this case. And I think what concerns me is that it's not just a question of civil causes of action. It's the words in the Public Law 280, civil laws that are of general application to private persons or private property. So that seems to me what we have to interpret, is it not? I think that's correct. And the State's authority to come in and deprive me of my parental rights is a question of the State's authority to come in and deprive me of my parental rights. And I think that's a question that doesn't seem to fall within that language. Well, the action, the adjudication certainly concerns private parties and private rights. If you conceive of the custody right as being a private right. Right. But, see, the custody, there's, you know, there's custody and there's custody. I guess the question is, what do you think is the best authority to interpret that phrase, which seems to me in the end kind of a linchpin of this whole case, boils down to those words, to interpret that in the manner that you advocate? I think the Court should turn to the legislation, first to the plain text of Public Law 280, which makes no distinction between a private claim or a public claim. That is the dicta, if you will, in Bryan. We would acknowledge that private claims may have been a significant consideration for Congress, but the legislative history, which is cited in our brief, specifically says that the intention, this is from the House report, was to vest the State courts with jurisdiction over all civil matters. There was no distinction made between what is a private or a public cause of action. Okay. And just I'll go back and look at that, because that's a helpful reference. But that reference, as you cited, is really kind of takes us back to where we are. So it's all civil matters, but we don't really have somewhere in the legislative history anything that gives us a window into these little words, private persons or property, correct, other than all civil matters. That's true. The legislative history is there. I'm just trying to understand what we will be looking for. How do these things play out? This is called in the matter of. That's what you say the proceeding is designated as, in the matter of, and then there's a name, right? Correct. And who become the parties to in the matter of? In a practical sense, how does that work out? Well, the mother is a party. The mother is there. What is she, a party? She's a party, yes. And is she represented by counsel? Yes. The counsel is appointed for the mother. All right. And the child becomes a what? A party as well. The child also has a right to counsel. And the state is acting in what's loosely called a parent's patriarchy capacity, right? Loosely, although the child has a separate counsel. But, yes, loosely. And in a sense, the state isn't really acting so much as the state. And if they find that the parent is an unfit parent, the state then removes the child from the parent's custody and places it in whatever administrative agency the state may have for dealing with such cases, right? Well, that determination is not made by a state regulatory agency, but is made by the state court. By the court. It's in a function of its adjudicatory power over civil actions. Right. How much does this differ from regular 600, 601, 602 WNI proceedings? I don't know, Your Honor. You might want to address that question to counsel for the intervener. One other thing that we haven't heard here, but it kind of surprises me because we always hear it in Indian cases, is the Indian is the canon of construction. And if you had some uncertainty or ambiguity here piecing together the statute and the legislative history, it would have to tip to the tribe. Is that appropriate here? No. Or why not? It's not, Your Honor. And that is a correct statement of the Indian canon certainly. But in this case, and this is why I opened the discussion by describing Public Law 280 and the unique situation of Indian tribes in California. Although there are amici who have appeared in this case, they cannot say that they represent all tribes in California, many of which have no infrastructure to provide justice in these kinds of cases. And that is something the Court can take judicial notice of when some tribes are comprised of very small family groupings. And so there is an interest upon the part of Indian tribes to have the State courts present and able to adjudicate these kinds of claims, because there is no other structure to protect the Indian child. And then in those circumstances, the State court, of course, has all of the usual obligations required under ICWA to provide notice and consider that. Couldn't the tribe give that back and have concurrent jurisdiction if it wanted? Let's just say we were to determine that there is exclusive jurisdiction in the tribe, tribes, I should say, at this point because of the way the statute comes out. Don't they have the ability under ICWA to ask the State to reassume some of that jurisdiction? There is a provision in ICWA for the negotiation of compacts between States and tribes. But with all due respect, Your Honor, the shoe is on the other foot here. It is clear that ICWA contemplated that States in Public Law 280 States, that the courts in Public Law 280 States would have jurisdiction over this kind of claim. But if they didn't, your parade of horribles wouldn't necessarily occur. In other words, you would have – I mean, tribes could either have inter-tribal compacts or arrangements or they could go through these reassumption provisions of ICWA and let the State take it back, could they not? If the State or the county had the facilities to and wanted to, that's part of what Public Law 280 is about. It requires the State to hear these cases. And so the ICWA compact requirement is something that contemplates a negotiation between the two parties. And I don't think that the Court could guarantee that the State or the local government body in every jurisdiction in the State would be willing to assume that burden. So we don't – do we have any authoritative statement as to whether the series of the Are those civil or criminal according to California law? What are they? Are these – are you referring to Section 300? Well, have they changed the numbers since I worked there? That was my confusion. I'm sorry. You're referring to 600. They're apparently the number 300. They've changed the numbers? Right. It's 300. So what are those? Are those civil or criminal or what are they? They're civil. They're civil. Yes. I would like to address a couple of – a few seconds left. Counsel for the appellant has represented to the Court what would happen to the child in the event that the Court ruled in appellant's favor. And I don't – I really don't understand how any representation of that can be made, because the tribe is a sovereign, and it has not yet been faced with this decision before it. So we really don't have any way of knowing what the tribe would do with the mother. But I think the Court is correct that as soon as the superior court judgment is voided, everything that it has done is voided. The relationship between the child and the adoptive parent will terminate. The termination of parental rights would terminate. And presumably, the child would then return to the mother. How old is the child now? Twelve. Twelve. It's been five years. These are always hard cases, of course. But it seems to me that in – like in the Hague Convention cases, that we don't sit as a family law court to try to sort that out. Do you agree with that? Yes, I do. Sad as it would be one way or the other for a child of 12 to – you know, it would certainly be disruptive. Right. One way or the other. I agree with that, Your Honor. And I think that raises the other jurisdictional question, which hasn't been addressed and hasn't been addressed at all, really. And that's whether this Court should exercise jurisdiction over the matter at all under the Rooker-Feldman Doctrine. And we contend that the district court erred in refusing to apply the doctrine. We think it's directly applicable here. This action is clearly an effort to undo what happened before the superior court. The relief requested with respect to all four counts of the complaint is twofold. First, void the superior court's judgment, return the child to the tribe and or the mother. Clearly, there is no purpose to this action but the appeal. Absolutely true. Absolutely true. But that doesn't mean that Rooker-Feldman overrides an explicit Federal statute, does it? Section 1914, which the Court relied upon, is not a grant of jurisdiction. It's a standing statute. I think the comparison to the habeas provision and the bankruptcy code is simply not apt. The Court refers to those sections. With respect to habeas, 28 U.S.C. section 2254. And with respect to the bankruptcy codes, 28 U.S.C. section 1334. And also with respect to the Hague Convention, 42 U.S.C. 11603, what the Court will find is very detailed provisions articulating the proper circumstances for a Federal court to exercise, a lower Federal court to exercise collateral review of a final State court judgment that is respectful of the Federalism concerns that's raised by this kind of action, and also the impacts that this kind of review has upon the Supreme Court's Article III power to stand at the head of the State appellate decision system. And there is no and no. But who would be, in your view, a court of competent jurisdiction? It would be the State court, the State appellate court. That's where this action arose. But why would you need the Federal government in a Federal statute to tell you that you had a State procedural right which you either do or don't have under State law? Because if you didn't have it, I don't think the Federal government could give it to you, could it? No. Well, it's identifying who has the – which parties have standing to petition the court of competent jurisdiction. And it's important to consider the plain language of Section 1914. It identifies the parties who have standing, the parent, the tribe, the custodian or the guardian of the child, and then it states that those parties have or may petition a court of competent jurisdiction to overturn essentially prior decisions of the State court for violations of other provisions of ICWA. Now, what's significant about that is that it presumes the existence of a court of competent jurisdiction. There's no language in that section that suggests that it is granting jurisdiction. It presumes the existence of jurisdiction. Now, if we look at Public Law 280 again and Section 1911 and 1918 of ICWA, jurisdiction is provided for in the tribal court and the State court, not the Federal court. Thank you, Counsel. Do you have anything else? Thank you. That's all, Your Honor. Thank you. May it please the Court, my name is Carolyn Todd. I represent 12-year-old Jane Doe. I noticed that in appellant's opening they said that the interests of the child and the tribe are congruent. If you look at the ICWA, Congress placed the child's interests as paramount. Section 1902 says that there are two purposes in the ICWA. One is to protect the child's interests. The other is to promote the interests of the Indian child's tribe and family. Protection is a much higher interest than promoting. Then if you look throughout the rest of the ICWA, it protects the child's interests. 1912B provides for appointment of counsel for the child, independent of anyone else's attorney. 1911B provides a good cause exception for tribal court jurisdiction, and one of the good cause exceptions would be the child's wishes. The child can say, don't send me to the tribal court jurisdiction. 1922 provides emergency jurisdiction, so even if a tribe does have exclusive jurisdiction, there is protection for this child. The ICWA did not provide a no-forum situation, and the emergency jurisdiction can last as long as there is an emergency, as long as a tribe has not come forward and asserted their jurisdiction. I think the ICWA notice provisions in 1922 assumes that a tribe is going to have to assert jurisdiction. This tribe and this mother did not assert that. In fact, the tribe came in a year after this case. It was notified at the very beginning of this case in 1999. It intervened in 2000, and at that point the tribe said, we'd like the child to be placed with a relative. The tribe was represented by the premier Indian law firm in California, and at that time the tribe, in its tribal resolution, said that its reason for asking the court to place the child with a relative was based on section 1915 of the ICWA. It said nothing about jurisdiction. It said nothing about the court should consider our resolution in any terms of comity, which is also provided in the ICWA. It merely said section 1915 provides a preference for the placement of the child. 1914 protects the child's placement from the collateral attack. We'll notice in 1914, any mistake under 1915, which is the placement preferences for the child, are not specified. They are not grounds for overturning a child's placement or adoption. Appellant also notes that and says that Holyfield and in the adoption of Holloway are cases that support the exclusion of the child. And I want to note that in those cases, the tribe came into court, into state court, and asserted jurisdiction. That wasn't done here. The United States Supreme Court in Holloway was looking at a case where the tribe came in two months after the child was adopted. That was well within the time period for appealing in state court that adoption. The child, the children, the twins, were only four months old at that time. And while the case wended through the court system for another four years, the United States Supreme Court in Holloway said that it wouldn't, you shouldn't reward someone that holds on to a child illegally or without, that they weren't going to reward the adoptive parents for dragging out what should have been, what should have been a situation for a tribal court jurisdiction. Holloway, similarly the tribe, asserted exclusive jurisdiction, came in, told the court we have exclusive jurisdiction during the proceedings of that case. There was still an ongoing state court proceeding. Jane is the only party here with constitutional rights. She has a 14th Amendment right to due process and to her permanent family. Are you suggesting that tribes do not have constitutional right of sovereignty? Your Honor, the tribe doesn't have a 14th Amendment constitutional right here. The Congress has plenary power to determine, you know, over tribes. The Congress defines the tribe's rights. And here the Congress has set forth the Indian Child Welfare Act. The Indian Child Welfare Act isn't an Indian sovereignty act. What the Congress has done is added in a third interest, and which normally is the balancing of interests between a child and a parent. And the Congress has added in a third interest there to be considered for promoted, and that's the tribe. And it's defined that so that there's no more, so that the tribe's interests are protected. And it defines the tribe's interest in determining what the tribe's interest in preserving their tribe and their future. At this point, while the tribe had an interest during the state court proceeding, the child has now been adopted. The tribe never asserted its jurisdiction. It never appealed. It appeared in the state court proceeding. At the time the parental rights were terminated, the mother lost her constitutional rights. At the time of the adoption, Jane and her adoptive family and her adoptive parents have constitutional rights that are protected. And those are defined in, and cited in Jane's brief. Excuse me. In rebrigadar, which is a California case, but in rebrigadar, also cites numerous United States Supreme Court cases and California cases that recognize that a child has a right to permanency. By dismissing a parent's case for lack of federal court jurisdiction, or alternatively affirming the district court's order and holding the state court properly exercised jurisdiction, this court will accomplish the following. It will protect the interests of Jane and her adoptive family, not destroying that family. Children who, like Jane and her Indian cousins and adoptive siblings, believe they are in forever adoptive homes and have established a sense of security and deep familial bond. In this case, we have a child who is sexually molested. She's been in her adoptive home for five years. She has an expectation of permanency. That expectation was made permanent three years ago. And now, belatedly, after appearing in the state court proceeding and never saying there was exclusive tribal jurisdiction, never asserting any kind of jurisdiction, even concurrent jurisdiction, now the mother is claiming that the tribe should have decided in the first place. It's too late. Your time has expired, but we'd like you to take the podium again. I just have one clarification I'd like you to make. I'm focusing again on Section 1914 and your argument that it's primarily a standing statute. My question is, if you look at that phrase, court of confident jurisdiction, would that also include, you said it includes, it's the state court, would it include the tribal court? Yes, it would. I think it would. So it would include state court, tribal court, but not federal court? I think there's a potential that it might include a federal court in a non-Public Law 280 state. Remember, Public Law 280 is a session of jurisdiction from the federal courts, in this instance, to the state courts. So I think that, well, it would not be the federal courts in this case, because the state court asserted jurisdiction, and there is no other basis for the federal courts to exercise jurisdiction in this case, because it's barred by the Rooker-Feldman Doctrine. So you're saying that if, but it could be a tribal court, for example, if the state court entered a judgment that the tribal, that the tribe or the child could petition, for example, to the tribal court to invalidate the state court action based on one of these sections? I think the tribe would have to assert jurisdiction over the case, which it didn't in this instance. So there's no action in tribal court. But if you started one in tribal court, then you would have two actions, correct? You'd have a state action, and then if the tribe decided to come in, not in the state action, but start its own action. Right. That would be like the Colville case. Right. Where the court upheld what happened in the state courts. And then your thought is that if it's a nonpublic law 280 case, that maybe this word competent jurisdiction could also include federal court, but not in this kind of a PL-280 case. Not in a PL-280 case where the state has jurisdiction and has rendered a final judgment and the federal jurisdiction is barred by Rooker-Feldman. Thank you. Thank you. Thank you, counsel. Your Honors, a few brief points with respect to statutory construction. First, with respect to the Indian canon, the suggestion was made that the Indian canon for some reason does not apply in this context. In fact, that issue has already been resolved by the Ninth Circuit, and I refer the court to the Venati decision in which the court said, with respect to ICWA, Congress's intention to create a tribal cause of action under the Act can be inferred from Congress's understanding of the law at the time the Act was enacted. The intention of Congress can be gleaned, at least in part by reference to prior law as Congress is presumed to be knowledgeable about existing law pertinent to any new legislation it enacts. Thus, Congress can be presumed to know that statutes passed for the benefit of Indian tribes will be liberally construed in favor of such tribes. With that said, I think the Attorney General makes an interesting point, and that, in his interpretation, Section 1914 is not really a jurisdiction statute like you find in habeas, which gives district courts jurisdiction, but it's really a standing statute that tells you the kind of people that can So I'm interested in Ms. Doe's response to that. Again, there's absolutely no support for that in the legislative history of the record. But first we would go to the face of the statute. Right. And on the face of the statute, what 1914 provides is not simply who may bring the action, but the causes of action may be brought. And that is, in fact, what Venati refers to. It says Congress's intention to create a tribal cause of action under the Act. So what Congress is doing is it was saying not only who has standing to raise these issues, but that these issues will be raised. And where will they be raised? In a court of competent jurisdiction. What does court of competent jurisdiction mean? Obviously it includes the states, which are already seized with these issues, but it also includes the federal courts. And, again, in Venati, the court referred to the fact that under Section 1331, the federal courts do have jurisdiction over claims by individual Indian tribal members asserting claims with respect to their own sovereignty, with protection of their tribe's sovereignty. And that appears on page 1554 of the Venati decision. Moreover, as the court pointed out, it would make absolutely no sense for Congress to have enacted this elaborate set of procedures to curb abuses by state courts and then provide that the only place where those could be vindicated is in precisely the courts that were the subject of concern for Congress. You know, I read that, and that's what prompted my question about tribal courts, because it seemed everybody had left out, at least the district judge, this issue of tribal courts. So that's why I asked Attorney General, well, maybe this means does this include tribal courts? If it included tribal courts but not federal courts, then it wouldn't be surplusage, would it? Well, I mean, I believe that even if it included tribal courts, which I don't believe was the intention, but even if it does include tribal courts, that doesn't foreclose federal courts. Once again, the purpose was to ensure that this federal law would be enforced. And to the extent that the whole purpose of ICCWA was a lack of confidence in the ability of states to preserve and protect the inherent tribal sovereignty of the Indian tribes, the appropriate way to do that is through the federal courts. Otherwise, you do have these situations in which ultimately the federal court is the arbiter. You have one case pending in state court, one case pending in tribal court simultaneously, and a struggle between the two as to who has supremacy. With the federal court action, there is no question because of the supremacy clause. The other point that I wish to make, Your Honors, is that with respect to this issue of why best this in federal courts, I think the arguments that are advanced by the state demonstrate precisely why. The reason ICCWA was enacted is because of this assumption that Indian tribes are incapable of self-governance, that Indian tribes will not take as good of care of their children as state courts will, that they are poor, that they are unsophisticated, that they lack sufficient infrastructure. It is these types of paternalistic notions that when confronted with the most important decisions that they must make as tribes, the future of individual children who are in jeopardy on their tribes, that Indian tribes won't take responsibility for that. It was precisely that type of notion that Congress rejected in enacting ICCWA. The only other issue that I raise for the Court's consideration is that with respect to Public Law 280, civil regulatory jurisdiction in Bryan was dicta, and in fact, Bryan has subsequently been adopted in numerous Supreme Court cases, such as the Cabazon case. It has been recognized by this Court. In the Venati case, it's been recognized in Wisconsin AG opinion as definitive with respect to the determination of what issues fall within Public Law 280 jurisdiction. Private actions and criminal prohibitory actions only, not the type of civil regulatory determination which is at issue here. If there are no further questions, I'll submit, Your Honor. Thank you, Counsel. The case is argued and order submitted. We'll be in recess until tomorrow morning at 9 o'clock. Thank you all for your help. Thank you. Thank you.
judges: Trott, McKeown, Shadur